**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**FILED**

June 23, 2021
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**WALTER S. ALEXANDER,**
**Claimant Below, Petitioner**

**vs.)    No. 20-0299** (BOR Appeal No. 2054803)
                    (Claim No. 2019003933)

**SNYDER INDUSTRIES, INC.,**
**Employer Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Walter S. Alexander, by counsel J. Thomas Greene Jr. and T. Colin Greene, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Snyder Industries, Inc., by counsel Jane Ann Pancake, filed a timely response.

The issues on appeal are compensability and medical treatment. The claims administrator rejected the claim on September 7, 2018. On January 16, 2018, the claims administrator issued an Order denying a request for a CT myelogram, fluoro myelogram, and an MRI of the brain. On October 16, 2019, the Workers' Compensation Office of Judges ("Office of Judges") affirmed the claims administrator's Orders. This appeal arises from the Board of Review's Order dated April 14, 2020, in which the Board affirmed the Order of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

(b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions[.]

1

(c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record. . . .

*See Hammons v. W. Va. Office of Ins. Comm'r*, 235 W. Va. 577, ___, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. W. Va. Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a *de novo* standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Office of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011). With these standards in mind, we proceed to determine whether the Board of Review committed error in affirming the decision of the Office of Judges.

Mr. Alexander, a forklift operator, completed a Report of Injury form on August 8, 2018, alleging an injury to his right shoulder. Section II of the form was completed on August 8, 2018, by Alice Ackerman, D.O., at Broaddus Hospital. Mr. Alexander reported that he was getting off of a forklift when he turned his body and felt sharp pain near his scapula. He also experienced numbness to his fingertips. Dr. Ackerman diagnosed him with brachial plexus radiculopathy.

On August 14, 2018, Mr. Alexander was treated at WVU Medicine by Joshua Sykes, M.D. Under "History of Present Illness", Dr. Sykes noted, "[h]e states he stood on a forklift and reached out and his shoulder rolled and went behind him on 8/8/18 . . . He is using rest, ice and Hydrocodone for pain control." Dr. Sykes diagnosed cervical radiculopathy at C7 and cervical radiculopathy at C8. In discussing a plan of treatment, Dr. Sykes explained that Mr. Alexander appeared to be suffering from cervical radiculopathy and not a specific shoulder injury. On August 28, 2018, Mr. Alexander returned to Dr. Sykes for a follow-up examination. Dr. Sykes found persistent numbness and tingling that responded to abduction positioning of the arm. The condition was noted as being very consistent with cervical radiculopathy complaints. It was recommended that he visit a neck specialist at the Spine Center to undergo further evaluation and treatment.

On September 7, 2018, the claims administrator issued an Order denying Mr. Alexander's application for benefits. The decision was based, in part, on the application for benefits and medical records in the file. Mr. Alexander protested the claims administrator's decision.

Mr. Alexander underwent an MRI on September 12, 2018, which revealed disc bulging and posterior osteophytes at C6-C7 with reverse of normal lordosis and moderate central canal stenosis. An x-ray of the cervical spine on September 28, 2018, had the impression of multilevel mild degenerative changes in the mid and lower cervical spine and normal soft tissue. An EMG on October 16, 2018, had the impression of right C7-C8 radiculopathy with no active denervation and mild bilateral median neuropathy at the wrist as seen with carpal tunnel syndrome, worse on the right.

Dr. Sykes referred Mr. Alexander to Russell Biundo, M.D., who initially saw him on October 25, 2018, then followed-up with him at an appointment on December 10, 2018. Dr. Biundo noted that he was injured when he stood up to exit his forklift, reached back when he felt himself starting to fall, and his shoulder rolled back, causing it to twist behind him. Dr. Biundo discussed the results of an MRI and a cervical epidural. The cervical epidural was performed on November 15, 2018, and failed to provide relief. Another MRI was performed on December 2, 2018, and was interpreted to show no definite abnormality that would suggest prior trauma or an obstructing mass. Degenerative cervical changes were found, most significant at C6-C7, and there was also right neural foraminal narrowing at C6-C7 with possible right C7 nerve root impingement. This MRI was compared to the MRI of September 12, 2018, which showed reversal of normal lordosis centered at the C6-C7 level. Axial images showed disc bulging at C6-C7 with associated posterior osteophytes. Moderate central canal stenosis was noted. Dr. Biundo's assessment and plan was cervical radiculopathy at C7, with referral to Richard Douglas, M.D., with UHC Neurosurgery, to discuss surgical intervention.

Dr. Douglas saw Mr. Alexander on December 19, 2018, and found weakness of the right hand, associated grip strength weakness, and motor dysfunction of the right upper extremity. His treatment plan included a request for a brain MRI to differentiate intracranial causes of memory loss, headaches, blurry vision, and facial paresthesia. Dr. Douglas also recommended myelograms of the cervical spine to further evaluate right C8 nerve root impingement.

The request for authorization of a CT myelogram, fluoro myelogram, and MRI of the brain was denied by the claims administrator on January 16, 2019, as the requested tests were found to be "not medically necessary or reasonably required to treat the claimant." Although the claims administrator did not authorize testing, a myelogram was performed on February 15, 2019, for the diagnoses of cervical degenerative disc disease, neural foraminal stenosis of the cervical spine, cervical nerve root impingement, and cervical spinal stenosis. The myelogram showed a posterior disc bulge at C6-C7 with no effacement of the nerve root sleeves.

Mr. Alexander testified on February 12, 2019, about the alleged injury. He stated that as he was stepping down out of his forklift onto the safety bar, his arm rotated back and he thought he was slipping and jumped to the ground. He said it caused "major pain" in the back of his neck and between his shoulders radiating down his right arm. He testified that the pain was in the center of his back, neck, and down his right arm. Seven months prior to the work incident, on March 24, 2018, he reported that he was treated for a left wrist fracture due to a skating fall. He was also diagnosed with right shoulder tendonitis three weeks before the alleged injury. Mr. Alexander testified that he did not have problems with these areas of his body prior to the work incident of August 8, 2018.

Chuanfang Jin, M.D., conducted an independent medical evaluation of Mr. Alexander on April 25, 2019. In her report, Dr. Jin noted that Mr. Alexander was holding the safety bar while exiting his forklift at work and began to slip. As he slipped, he jerked his arm backward and felt pain in the right side of his neck, going down between his shoulder blades and pain in his upper back going down his right arm into his hand. After examination, Dr. Jin expressed the opinion that

3

Mr. Alexander did not describe a physical trauma or "out-of-ordinary activity", leading her to disregard the explanation for the alleged work injury. Instead, Dr. Jin opined that this is a case where symptoms of radiculopathy, a non-work injury condition, occurred acutely at the workplace. Dr. Jin went on to say:

> Medically, the described incident on August 8, 2018, does not cause any health hazard or damage to his cervical spine. His cervical spine degenerative disease is a pre-existing condition and is not causally related to his employment. His employment is not an etiology or cause of his current health problem, cervical degenerative disc disease.

Dr. Jin did not believe the CT myelogram, fluoroscopic myelogram, or the MRI of the brain were medically necessary or reasonably required for the August 8, 2018, work incident. Dr. Jin stated that the MRI of the cervical spine on September 12, 2018, did not show any traumatic lesions but did show degenerative disease of the cervical spine, especially severe at C6-C7. She opined, from a medical perspective, that the study is evidently for degenerative cervical spine disease and its complications and there is no causation between the fluoroscopic myelogram of the cervical spine and the alleged occupational injury of this claim. She also found no medical evidence to indicate or suggest a brain injury occurred and no plausibility for the requested imaging study.

Jonathan Luchs, M.D., performed an Age of Injury Analysis of the September 12, 2018, film of the cervical MRI on June 20, 2019. He stated that the MRI revealed evidence of degenerative disc disease with a disc bulge and osteophyte formation at C6-C7. He also noted disc desiccation in the remainder of the cervical spine which reflected chronic degenerative changes of the discs and evidence of central canal stenosis at C6-C7 secondary to chronic degenerative changes of the cervical spine. Dr. Luchs concluded that the MRI performed one month after the injury showed chronic degenerative changes, but the age of the reversal of the cervical lordosis was indeterminant.

On October 16, 2019, the Office of Judges affirmed the claims administrator's Orders dated September 7, 2018, rejecting the claim, and January 16, 2019, denying a request for a CT myelogram, fluoro myelogram, and MRI of the brain. Based upon the reports by Drs. Jin and Luchs, as well as the report from Broaddus Hospital in March of 2018, the Office of Judges found that Mr. Alexander had neck and shoulder problems predating the alleged injury in the claim. Dr. Jin's analysis was found to be very persuasive that the symptoms may have occurred at work, but the underlying cause for the symptoms, the degenerative conditions, were unrelated to Mr. Alexander's employment. Because the symptoms were preexisting at the time of the alleged incident, the Office of Judges affirmed the claims administrator's rejection of the claim on September 7, 2018. As it was found that the claim was properly rejected, the Office of Judges found that the denial of the requested medical treatment by the claims administrator on January 16, 2018, should be affirmed. The Board of Review issued an Order dated April 14, 2020, adopting the findings of fact and conclusions of law of the Office of Judges and affirming the decision.

After review, we agree with the decision of the Office of Judges, as affirmed by the Board of Review. While Mr. Alexander experienced neck and right arm pain at work on August 8, 2018,

the degenerative cervical spine condition, which was determined to be the cause of the symptoms, did not result from his employment. Dr. Jin specifically opined that the "cervical spine degenerative disease is a pre-existing condition and is not causally related to his employment." As the claim was properly denied, so was Mr. Alexander's request for medical treatment. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: June 23, 2021**

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton